FILED
2009 Oct-01 AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOM KUNSTMANN, et al. } | |
| } | |
| Plaintiffs, } | |
| } | CIVIL ACTION NO. |
| v. } | 08-AR-1969-S |
| } | |
| AARON RENTS, INC., d/b/a, } | |
| AARON'S SALES AND LEASE } | |
| OWNERSHIP } | |
| } | |
| Defendant. | |

**MEMORANDUM OPINION**

This action is filed pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (2006) by the named plaintiff, Tom Kunstmann ("Kunstmann"), and twenty-two (22) other opt-in plaintiffs (collectively "plaintiffs"), who purport to sue on behalf of themselves and other similarly situated employees. Before this court is plaintiffs' motion to strike certain deposition testimony. The motion also seeks sanctions against defendant, Aaron Rents, Inc., d/b/a, Aaron's Sales and Lease Ownership ("Aaron's"). For the reasons below, plaintiffs' motion to strike will be granted in part and denied in part. Plaintiffs' motion for sanctions will be denied. An appropriate order will be entered separately.

**Facts and Procedural History**

On October 22, 2008, Kunstmann initiated the instant action against Aaron's, seeking, *inter alia*, to recover unpaid overtime compensation to which he alleges he is entitled. Kunstmann alleges

that Aaron's violated the FLSA by misclassifying him and all other General Managers as exempt employees because their job duties actually consisted almost entirely of non-exempt work. (Doc. 1, at 2-3.) Since then, twenty-two (22) additional persons have opted into this action as plaintiffs. (*See* Docs. 2, 3, 12, 26, 30, 33, 35 & 42.) All plaintiffs are current or former General Managers of Aaron's stores.

An action to recover for FLSA violations may be maintained on behalf of unnamed plaintiffs, provided that the named plaintiffs satisfy the court that all putative plaintiffs are "similarly situated." 29 U.S.C. § 216(b) (2006). Plaintiffs filed their motion to facilitate notice on February 9, 2009. (Doc. 14.) On April 20, 2009, this court denied plaintiffs' motion, without prejudice, because plaintiffs had failed initially to persuade this court that there were others who were similarly situated, an undertaking which must be initially conducted at the notice stage of the litigation.[1] (Doc. 37.) This court ordered limited discovery to aid its ultimate determination of the issue. (Doc. 37, at 11-12.) On May 4, 2009, plaintiffs renewed their motion to facilitate notice. (Doc. 43.) In response, Aaron's asked this

---

[1] In a collective action under the FLSA, granting a motion to facilitate notice, after a determination that putative plaintiffs are similarly situated is made at the notice stage of the litigation, is tantamount to conditional class certification were the action to be proceeding as a class action. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 n.40 (11th Cir. 2008).

court to delay ruling on plaintiffs' motion until after some discovery had been undertaken. (Doc. 46.) This court agreed, and accordingly denied plaintiffs' renewed motion and ordered that the parties depose ten (10) persons who were selected by the court.[2] (Doc. 48, at 2.)

In its order issued on April 20, 2009, this court made clear that discovery at the notice phase was to focus solely on whether there was a desire to opt-in and whether the purported plaintiffs were similarly situated. (Doc. 37, at 12.) The depositions were not to delve into the merits. (Doc. 37, at 12.) In response to repeated disagreements regarding the proper scope of deposition questions, this court, at the July 7, 2009, hearing on the matter made clear that it did not intend to "be an arbiter on everything that comes up in a deposition." (Doc. 61, at 4: 6-7.) Instead, this court stated that it would resolve the issue of whether testimony had been improperly directed towards the merits upon a

---

[2] As stated in its order of May 18, 2009, this court "endeavored not only to pick deponents with diverse geographical locations, but persons who are current general managers, persons who are former general managers, persons who have already opted-in, persons who, after attending the meetings called by Aaron Rents, have indicated a desire not to opt-in, and such persons who have, thus far, expressed no opinion." (Doc. 48, at 2.) The ten (10) persons this court designated to be deposed were Tom Kunstmann, Daniel Guedes, Joseph McMichael, Elijah Dixon, Lester Gonzalez, Tylor Pereza, Jesse Corona, Charles Everette, Cainan Smith, and Jason Utley. (Doc. 48, at 2.) For reasons irrelevant to this opinion this court has excused the parties from the obligation to depose Jesse Corona and Daniel Guedes. (*See* Docs. 60 & 69.)

proper motion to strike after the initial depositions had been completed. (*See* Doc. 61, at 6:9-7:22.)

On August 21, 2009, plaintiffs filed the instant motion, seeking to strike portions of deposition testimony they claim were elicited by questions that exceeded the parameters set by this court. (Doc. 70.)  Plaintiffs also seek sanctions against Aaron's, claiming that Aaron's questions "frustrated the fair examination of the deponent."  (Doc. 70, at 2 n.1.)  Aaron's filed its brief in opposition on August 31, 2009.  (Doc. 72.)  This court is now called upon to determine which questions complied with this court's order limiting the scope of the initial discovery.

## Discussion

As this court noted previously, "[I]ts . . . sometimes difficult to determine which side of the line you're on. . . . I could come up with a question that might be relevant on both of them."  (Mot. Docket Tr. 14: 2-5, June 19, 2009).  In an attempt to clarify the line between questions designed to probe whether plaintiffs are similarly situated and those that bear only on the merits of the case, this court stated: "At the notice stage, it is plaintiffs' burden to demonstrate more than mere similarity as to both job requirements and pay provisions, however, it is not necessary for plaintiffs to demonstrate similarity as to actual job duties performed and dollar amounts/benefits paid."  (Doc. 37, at 11.)  Thus, questions that are designed to elicit whether a

4

deponent was required, as a condition of his or her employment as General Manager, to exercise discretion are permissible. Questions regarding whether, and to what extent, the deponent **actually exercised** that discretion are merits questions and should not have been asked. This court also stated at the July 7, 2009, hearing in this case that questions directed at the credibility of the deponents were allowable. (Doc. 61, at 8: 13-20.) Therefore, if a deponent has made a previous representation on an issue, questions that might otherwise impermissibly delve into the merits of the case may become permissible as bearing on the deponent's credibility.

**I.   Plaintiffs' Motion to Strike**

Plaintiffs identify four broad categories of deposition questions posed by Aaron's that they claim impermissibly go to the merits of the case. Those categories include questions that inquire as to (1) "the amount of discretion a General Manager may be able to use in performing his or her actual job duties"; (2) "the amount of time a General Manager spends performing his or her actual job duties"; (3) "whether and how General Managers supervised hourly employees"; and (4) "whether General Managers were ultimately responsible for certain job assignments." (Doc. 70, at 10.)

As this court specifically noted at the July 7, 2009, hearing:

> [T]here is a distinction to be drawn between the kind of
> questions that would be crafted and should be responded
> to that are designed for and are limited to the questions
> of similarity between people who are called managers
> within the knowledge of a particular function and the
> desire of that person to opt in and questions which go to
> the ultimate merits.

(Doc. 61, at 5:18-24.)  It is clear that this court contemplated questions designed to evaluate each deponent's understanding of what types of duties General Managers, as a group, were required to perform.  Questions that seek to determine the level of discretionary authority granted to all General Managers appropriately address the issue of whether the putative plaintiffs are in fact similarly situated to one another.  Plaintiffs correctly point out that questions dealing with the amount of discretion a deponent **actually** exercised and the amount of time that a deponent **actually** spent on certain tasks are merits based questions designed to elicit the particular deponent's "actual job duties performed," an inappropriate topic at this juncture of the litigation.  Simply put, the objective of the depositions ordered by this court was to determine the job duties of General Managers, not to determine how each General Manager performed those duties.

However, as Aaron's notes in its response, some of the plaintiffs have "submitted conflicting Declarations regarding the job experiences of Aarons' General Managers."  (Doc. 72, at 10.) Thus, questions that would otherwise impermissibly target "the amount of discretion a General Manager may be able to use in

6

performing his or her actual job duties," or "the amount of time a General Manager spends performing his or her actual job duties," could potentially be proper, provided that a deponent has made a previous representation on the topic, such as a declaration that has been filed with this court.  While five (5) of the deponents have signed such declarations, Kunstmann is the only deponent to have signed a declaration claiming to have spent a majority of his time performing non-exempt work. (*See* Kuntsmann Decl., at 2.) The other four deponents who had filed declarations did so at Aaron's behest and all claim to have spent the overwhelming majority of their time performing exempt managerial work. (*See* Pereza Decl., at 3; Dixon Decl., at 3; McMichael Decl., at 3; Gonzalez Decl., at 3.) There is no evidence that those four (4) deponents have ever made any contradictory statements, and none of them have opted in as plaintiffs in this case.  Thus, while it is true that Aaron's had the right to question the deponents regarding inconsistencies in order to test their credibility, there is no evidence that any of the five (5) deponents who had signed declarations have ever deviated from the positions they took in those declarations. Additionally, it is clear that, with regard to the other three (3) deponents who had not signed any declaration in this case, questions directed to the amount of discretion they actually exercised and the amount of time that they actually spent on certain tasks were not asked to test credibility and were thus

improper.

    Aaron's also claims that its questions "are relevant to issues raised by plaintiffs in their filings and during the depositions." (Doc. 72, at 15.)  Aaron's points to specific questions asked by plaintiffs during the depositions of Mr. Everette, Mr. Smith, Mr. McMichael, and Mr. Gonzalez as somehow "opening the door" for Aaron's to ask the questions to which plaintiffs now object.  (*See* Doc. 72, at 17; *see also* Everette Dep. at 90:12-91:3; Smith Dep. at 141:20-142:23; McMichael Dep. at 112:20-113:11; Gonzalez Dep. at 99:24-25, 102:19-21, 103:12-13.)  Specifically, Aaron's complains that "[f]or Plaintiffs to suggest now that the Court should strike the same testimony because it was generated by Aaron's undermines all traditional notions of fairness."  (Doc. 72, at 18.)  This court agrees that to allow plaintiffs to elicit testimony that bears on the merits while prohibiting Aaron's from doing so would "undermine[] all traditional notions of fairness."  (Doc. 72, at 18.)  However, this court does not agree that either party had the ability to "open the door" to testimony on the merits after this court specifically prohibited such questions. Rather than ask this court to strike offending testimony elicited by plaintiffs, Aaron's uses such testimony as a justification for its own impermissible questions.  Such an argument is unavailing.  This court will rule on plaintiffs motion to strike, and if Aaron's files a similar motion on similar grounds this court will also rule on it.

8

Finally, Aaron's argues that "questions regarding specific job experiences of the deponents are relevant to this Court's 'similarly situated' analysis." (Doc. 72, at 18.)  As discussed above, questions that are designed to elicit whether a deponent was required, as a condition of his or her employment as General Manager, to exercise discretion are permissible.  However, questions regarding whether, and to what extent, the deponent **actually exercised** that discretion are merits questions, and should not have been asked.

Thus, plaintiffs are correct that Aaron's should not have posed questions that elicited (1) "the amount of discretion a General Manager may be able to use in performing his or her actual job duties," and (2) "the amount of time a General Manager spends performing his or her actual job duties."  (Doc. 70, at 10.)  Plaintiffs' complaints regarding questions that elicited (3) "whether and how General Managers supervised hourly employees"; and (4) "whether General Managers were ultimately responsible for certain job assignments," on the other hand, are overbroad.  (Doc. 70, at 10.)  It is true that questions directed at "how General Managers supervised hourly employees" exceed the permissible scope of questioning.  But questions directed at "whether . . . General Managers supervised hourly employees" and "whether General Managers were ultimately responsible for certain job assignments" do not bear on the merits, but are instead designed to determine the scope

9

of job duties of General Managers as a group.  They are completely distinct from questions regarding how each General Manager actually performed, or failed to perform, those duties.

Plaintiffs specifically set out the lines of testimony that they seek to have stricken in Appendix A to their motion.  (*See* Doc. 70, App. A.)  In response, Aaron's also provides its justification for each line of testimony identified by plaintiffs in Appendix A to its response.  (*See* Doc. 72, App. A.)  Following the lead of the parties, this court will specifically rule on plaintiffs' motion, line by line, in Appendix A to the order that will accompany this memorandum opinion.

## II.  Plaintiffs' Motion for Sanctions

In addition to moving this court to strike testimony, plaintiffs also ask this court to impose sanctions on Aaron's pursuant to Rule 30(d)(2), F.R. Civ. P.,[3] for asking questions that exceeded the scope of the depositions set by this court in its order of April 20, 2009 and its order of May 18, 2009.  Specifically, plaintiffs seek attorneys' fees as compensation for the time spent preparing and filing the instant motion.

As this court stated at the June 19, 2009, hearing in this case, "[I]ts . . . sometimes difficult to determine which side of

---

[3] Rule 30(d)(2) provides that "[t]he court may impose an appropriate sanction–including the reasonable expenses and attorney's fees incurred by any party–on a person who impedes, delays, or frustrates the fair examination of the deponent."

the line you're on." (Mot. Docket Tr. 14: 2-5, June 19, 2009.) Plaintiffs have not presented any credible evidence that Aaron's questions were intentionally vexatious, and this court does not believe that Aaron's questioning was undertaken in bad faith. Although some of the questions posed by Aaron's exceeded the scope of the depositions established by this court, given the fact that the line between questions aimed at the "similarly situated" inquiry and those aimed at the merits was concededly nebulous, sanctions are not warranted.

As a final note, the parties in this action have asked this court to issue sanctions a combined total of four (4) times. Each time this court has refused to grant such a request.[4] It should be clear by now that this court is reluctant to sanction conduct that it does not deem intentionally vexatious. This court laments the increasingly contentious tone this litigation has taken on, and hopes the parties will strive to espouse a sense of civility and professionalism in conducting the remainder of this action. This

---

[4] It is true that in its order of August 14, 2009, this court dismissed plaintiff Daniel Guedes from this action with prejudice, which was one of several sanctions sought by Aaron's in response to Guedes' refusal to attend his own deposition. However, it was clear that Guedes no longer wished to be a party to this lawsuit, and the attorneys for plaintiffs had also filed a motion seeking permission to withdraw as counsel for Guedes. This court deferred ruling on the other sanctions sought by Aaron's. Thus, while it is technically correct to say this court partially granted Aaron's August 3, 2009, motion for sanctions by dismissing Guedes as a party, such action was not intended to punish plaintiffs for any "wrongdoing."

court does not mean to discourage the filing of **meritorious** motions for sanctions.  However, the frequency with which sanctions have been sought in this case for conduct that is clearly not indicative of any bad faith by either party not only slows the pace of this litigation, but also wastes scarce judicial resources.

## Conclusion

It is for these reasons that plaintiffs' motion to strike and for sanctions is due to be partially granted insofar as it seeks to strike questions posed by Aaron's that bear on the deponents' actual job duties performed.  Plaintiffs' motion will be denied in all other respects.  An appropriate separate order, along with an appendix thereto setting forth the exact testimony to be stricken, will be entered.

DONE this 1st day of October, 2009.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE