IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOM KUNSTMANN, et al. } | |
| } | |
| Plaintiffs, } | |
| } | CIVIL ACTION NO. |
| v. } | 08-AR-1969-S |
| } | |
| AARON RENTS, INC., d/b/a, } | |
| AARON'S SALES AND LEASE } | |
| OWNERSHIP } | |
| } | |
| Defendant. | |

**MEMORANDUM OPINION**

This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (2006), by the named plaintiff, Tom Kunstmann ("Kunstmann"), and thirty-three (33) other opt-in plaintiffs (collectively "plaintiffs"), who sue on behalf of themselves and other similarly situated employees. Before this court is plaintiffs' renewed motion conditionally to certify a collective action and to facilitate notice as provided by 29 U.S.C. § 216(b). For the reasons below, plaintiffs' motion will be granted.

**FACTS**

On October 22, 2008, Kunstmann initiated the action against defendant, Aaron Rents, Inc., d/b/a, Aaron's Sales and Lease Ownership ("Aaron's"), seeking, *inter alia*, to recover unpaid overtime compensation to which he alleges he and the putative class members are entitled. All plaintiffs are current or former general managers of Aaron's stores. Aaron's specializes in sales and lease

ownership of personal property. It has stores in forty-nine states. (Doc. 21, at 11.) Aaron's has one hundred nine (109) "regions" throughout the United States. (Doc. 21, at 11.) Each region is comprised of approximately twelve stores and is overseen by a regional manager who supervises those stores. (Doc. 21, at 11.) Kunstmann alleges that Aaron's violated the FLSA by misclassifying him and all other general managers as exempt employees because their job duties actually consisted almost entirely of non-exempt work. (Doc. 1, at 2-3.) Specifically, the declarations filed by plaintiffs contend that: (1) plaintiffs and other similarly situated general managers were required to perform both managerial and non-managerial duties without receiving overtime compensation; (2) Aaron's had a uniform policy and practice of consistently requiring its general managers to work over forty (40) hours per week without overtime compensation; (3) the regional manager performed all important managerial job duties for each store, including approving any overtime hours and setting store hours; (4) general managers did not have any input in setting their store's payroll budget; (5) "all, or nearly all" of plaintiffs' and other similarly situated general managers' time was spent performing non-managerial functions; (6) all stores were basically the same in size and in layout; (7) the non-managerial manual tasks performed consisted of (a) unloading and loading trucks, (b) placing stock on the floor according to a pre-

determined plan, (c) making phone calls for collections according to a pre-determined plan, and (d) visiting customers who were more than thirty days behind on their account in order to collect on the account; (8) there was only one "store policy and procedure manual" which all stores were to follow; (9) the inventory of store merchandise within each store was determined by corporate headquarters; and (10) there was only one general manager job description applicable to all general managers. (*See* Doc. 1; Doc. 14, Ex. 1; & Doc. 27, Exs. 1-12.)  After Kunstmann filed his complaint, thirty-three (33) additional persons have opted into this action as plaintiffs. (*See* Docs. 2, 3, 12, 26, 30, 33, 35, 42, 78, 83 & 84.)

   Plaintiffs filed their first motion to facilitate notice on February 9, 2009. (Doc. 14.)  On April 20, 2009, the court denied plaintiffs' motion, without prejudice, and ordered limited discovery to aid in the ultimate determination of the whether the requisite desire to opt-in existed and whether the proposed class members are sufficiently similarly situated to warrant conditional certification. (Doc. 37, at 11-12.)  On May 4, 2009, plaintiffs renewed their motion to facilitate notice. (Doc. 43.)  In response, Aaron's asked this court to delay ruling on plaintiffs' motion until after some discovery had been undertaken. (Doc. 46.)  This court agreed, and accordingly denied plaintiffs' renewed motion and ordered that the parties depose ten (10) persons who were selected

by the court. (Doc. 48, at 2.)

On August 21, 2009, after the depositions had been completed, plaintiffs filed a motion seeking to strike portions of deposition testimony they claimed were elicited by questions that exceeded the parameters set by this court. (Doc. 70.) Plaintiffs also sought sanctions against Aaron's, claiming that Aaron's questions "frustrated the fair examination of the deponent." (Doc. 70, at 2 n.1.) The court granted plaintiffs' motion in part and denied it in part. Thereafter, on November 12, 2009, the court ordered plaintiffs to renew their motion to facilitate notice within seven (7) calendar days or otherwise have their case dismissed for want of prosecution. (Doc. 76.) Plaintiffs renewed their motion to facilitate notice on November 19, 2009. (Doc. 80.) Aaron's filed its response in opposition on December 4, 2009. (Doc. 82.)

## ANALYSIS

Under the FLSA's collective action provision, "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Members of such a conditionally certified class receive notice of the right to opt-in as plaintiffs. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). "[T]o maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." *Id.* at 1258. Additionally, "the district

court should satisfy itself that there are other employees . . . who desire to 'opt-in' . . . ." *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

The Eleventh Circuit has established a two-step process by which district courts are to manage FLSA collective actions. The first stage is the "conditional certification" or "notice" stage. *Morgan*, 551 F.3d at 1260. Granting a motion to facilitate notice after determining that putative plaintiffs are similarly situated is tantamount to a conditional class certification, as if the action were to be proceeding as a class action under Rule 23, F.R. Civ. P. *See id.* at 1261 n.40. The second stage is triggered by a defendant's motion for decertification, at which time the court has a more detailed record and can make a more informed factual determinations. *Id.* At both stages, the decision of whether to certify a class, conditional or final, hinges on whether the plaintiffs are "similarly situated". *Id.*

In the "conditional certification" or "notice" stage, the standard for determining similarity is "fairly lenient" and "flexible." *Id.* at 1259 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218). To meet this low standard, plaintiffs must only show that there is a "reasonable basis" for their claim that there are other similarly situated employees. *Morgan*, 551 F.3d at 1259. Neither the FLSA nor the Eleventh Circuit has provided a precise definition of the term "similarly situated," but

the Eleventh Circuit has given some guidance, holding that district courts should look to whether employees are "similarly situated with respect to their job requirements and with regard to their pay provisions." *Id.* at 1259 (quoting *Dybach*, 942 F.2d at 1567-68). This court has further elucidated the requirement, stating "[a]t the notice stage, it is plaintiffs' burden to demonstrate more than mere similarity as to both job requirements and pay provisions, however, it is not necessary for plaintiffs to demonstrate similarity as to actual job duties performed and dollar amounts/benefits paid." (Doc. 37, at 11.)

Plaintiffs have met their light burden of showing that the current and former general managers of Aaron's stores are similarly situated. The Aaron's general manager job description is universally applicable to all general managers, all general managers receive the same training, all general managers are bound by the Pathway Operating Manual, and all are subject to the same pay policies. The evidence shows that Aaron's sees its general managers all as serving the same function and occupying the same position within the company's corporate structure. To suggest that Aaron's general managers are not similarly situated general managers "with respect to their job requirements and with regard to their pay provisions" is both contrary to what appears in the record, and also counterintuitive.

Aaron's attempts to defeat plaintiffs' motion by arguing that

"Plaintiffs do not allege that [Aaron's] policies or practices **resulted** in their improper treatment under the FLSA. Therefore, Plaintiffs cannot proceed under the 'single decision, policy, or plan' theory." (Doc. 82, at 28.)  However, this bit of legal legerdemain misses the point.  Clearly plaintiffs do not argue that the fact that the general managers are bound by the same policies and procedures resulted in an FSLA violation.  Rather, plaintiffs convincingly argue that it is because Aaron's general managers are subject to the same policies and procedures that they are properly considered similarly situated, making collective action an available vehicle for their claims that Aaron's violated the FSLA.

Aaron's also devotes a significant portion of its brief to a discussion of how "Plaintiffs are anomalies among Aaron's General Managers and not similarly situated with their proposed class for purposes of certifying this matter as a collective action."  This argument hinges on a discussion of the actual job duties that are performed by some or all of Aaron's general managers, an improper focus at this stage.  Accordingly, the court places little weight upon section III.D.3. of Aaron's brief.  Certainly, the analysis of this question may be more exacting when the "fairly lenient" standard is no longer the measuring stick by which this court is to judge whether to certify this case as a collective action.  However, for now, plaintiffs have met their low burden of showing that all current and former Aaron's general managers are similarly

situated.

In deciding whether plaintiffs have met their burden of showing that other employees desire to opt-in, the court must weigh the number of consents filed against the size and geographic disparity of the entire class. *See Rodgers v. CVS Pharmacy, Inc.*, No. 05-770, 2006 WL 752831, at *4 (S.D. Fla. Mar. 22, 2006)(refusing to conditionally certify class when there were only two opt-in plaintiffs out of over 250,000 employees in thirty-six (36) states). Plaintiffs have met their low burden of showing sufficient desire to opt-in for the court to facilitate notice. As this court noted in its opinion of April 20, 2009, "the fact that nineteen opt-in plaintiffs have filed consents to sue and most have filed at least one declaration indicates that there is some desire to opt-in." Since that time fifteen (15) additional current or former general managers have opted into this action as plaintiffs and one has withdrawn as a plaintiff. As plaintiffs correctly point out, because the standard is "fairly lenient" at the notice stage, the fact that thirty-three (33) persons have opted-in as plaintiffs over the short life of this action without formal notice having been ordered by this court suggests that there is sufficient desire to opt-in. Additionally, the opt-in plaintiffs represent at least seven (7) different states, including Alabama, Michigan, Georgia, Mississippi, Florida, and South Carolina. (Doc. 80, at 2.) Such geographical diversity also supports the conclusion that

8

plaintiffs' class should be conditionally certified.

Aaron's points to the eight hundred fifty-six (856) general managers who signed declarations stating that they spent an overwhelming majority of their time performing exempt work as evidence that there isn't sufficient desire to opt-in. However, at least eleven (11) of those general managers thereafter opted into this action. There is no way to know how many additional opt-in plaintiffs will join the action unless notice is given. What is clear, however, is that plaintiffs have met their light burden of establishing desire to opt-in at the notice phase. However, once notice is given, should it appear that there is insufficient desire to opt-in, plaintiffs may have difficulty surviving Aaron's anticipated motion to decertify.

## CONCLUSION

For the foregoing reasons, plaintiffs' renewed motion to conditionally certify this action as a collective action and to facilitate notice is due to be **GRANTED**. An appropriate separate order will be entered.

DONE this 25th day of January, 2010.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE