FILED
2013 Jan-23 PM 12:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TOM KUNTSMANN, on behalf of himself and all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO.:2:08-CV01969-KOB** |
| **AARON RENTS, INC.,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the court on Defendant Aaron Rents, Inc.'s Motion to Decertify the Fair Labor Standards Act collective action filed by Plaintiff Tom Kuntsmann on behalf of himself and others similarly situated. Kuntsmann filed a complaint on October 22, 2008, alleging that Aaron willfully violated the Fair Labor Standards Act ("FLSA") by misclassifying him and similarly situated employees as exempt from the FLSA's overtime requirements. (Doc. 1). Mr. Kuntsmann sought to represent a collective class of "opt-in" plaintiffs who were also general managers for Aaron stores across the country. The Honorable William M. Acker, Jr. conditionally certified the class in January 2010; the parties engaged in discovery; and after unsuccessful mediation, the case was reassigned to the undersigned. The court held a hearing on Aaron's motion to decertify on January 14, 2013. For the reasons stated on the record and summarized below, Aaron's Motion to Decertify is DENIED.

## I. Factual and Procedural Background

Aaron provides consumers with sale and lease ownership and specialty retailing of residential furniture, consumer electronics, home appliances, and accessories for personal, family, or household purposes. Aaron hired Kuntsmann as a Regional Sales Manager in July 2005. Kuntsmann held that position until he was demoted to the General Manager ("GM") position at the Anniston, Alabama store on November 1, 2007. Kuntsmann worked as GM at the Anniston store for five months, until April 2008, when Aaron terminated him for violating company policy. During his time as GM of the Anniston store, Kuntsmann was the highest ranking and only employee in the store who Aaron classified as exempt from the FLSA's minimum wage and overtime requirements. Kuntsmann reported to Regional Manager ("RM") Paula Hooks throughout his tenure as GM of the Anniston store.

Kuntsmann filed a Collective Action Complaint against Aaron on October 10, 2008 for equitable and injunctive relief and to remedy alleged violations of the wage provisions of the FLSA. Specifically, Kuntsmann and similarly situated employees seek to recover unpaid overtime compensation, allegedly owed to them under the FLSA, 29 U.S.C. § 201 *et seq*. Kuntsmann asserts that he and other similarly situated GMs were paid a specified weekly salary, but were not paid any overtime wages despite the fact that they worked in excess of 40 hours per week. This court conditionally certified the class, which included Kuntsmann and 247 Opt-In Plaintiffs ("Opt-Ins"), with its January 25, 2010 Order. Aaron asserts that the class should be decertified pursuant to § 216(b) of the FLSA because the 248 plaintiffs are not "similarly situated," as the FLSA requires.

## II. Legal Standard

Section 216(b) of the FLSA provides that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Therefore, to maintain a collective action under the FLSA, Kuntsmann must demonstrate that he and the other opt-in plaintiffs are similarly situated. *See Anderson v. Cagle's*, 488 F.3d 945, 952 (11th Cir. 2007).

Certifying an FLSA collective action is a two-step process. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). First, a class is conditionally certified; this stage is also known as the "notice stage." *Id*. This initial certification "authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees." *Id*. at 1259 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). Before notice is given, however, the court must determine whether there are potential similarly situated plaintiffs. *Id*. at 1259-60. The Eleventh Circuit has "described the standard for determining similarity, at this initial stage" as "fairly lenient." *Id*. at 1260-61 (citing *Anderson*, 488 F.3d at 953; *Hipp*, 252 F.3d at 1218). After notice is given, "putative class members have the opportunity to opt-in. The action proceeds throughout the discovery as a representative action for those who opt-in." *Id*. at 1259. The decision to conditionally certify a collective action may be "reexamined once the case is ready for trial." *Id*. at 1261.

The second stage in the certification process begins when an employer makes a motion for decertification. *Morgan*, 551 F.3d at 1261. The standard employed by the district court at this stage is "less lenient, and the plaintiff bears a heavier burden." *Id*. (citing *Anderson*, 488 F.3d at 953). The Eleventh Circuit has "refused to draw bright lines in defining similarly, but [has]

explained that as more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." *Id.* (citing *Anderson*, 488 F.3d at 953 ("Exactly how much less lenient we need not specify, though logically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action.")). Indeed, the Eleventh Circuit has emphasized that the "'ultimate decision rests largely within the district court's discretion,' and clarified that in order to overcome the defendant's evidence, a plaintiff must rely on more than just 'allegations and affidavits.'" *Id.* (quoting *Anderson*, 488 F.3d at 953).

The Eleventh Circuit has approved three factors to aid the district court in determining whether the plaintiffs are similarly situated at this second stage: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Anderson*, 488 F.3d at 953 (quoting with approval *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). The court examined to each of these three factors in determining that Kuntsmann has demonstrated that he and the opt-in plaintiffs are similarly situated.

## III. Legal Analysis

Aaron asserts that significant differences exist amongst the many opt-in plaintiffs, all of whom managed different stores, in different regions, under the guidance of different RMs. The defendant argues that these differences caused GMs' management duties and the level of discretion with which they carried them out to vary widely. While Kuntsmann contends that he and the Opt-Ins devoted the vast majority of their time performing nonexempt (non-managerial)

duties, Aaron argues that the evidence demonstrates that each Opt-In devoted different yet substantial amounts of time performing exempt managerial duties. Aaron asserts that because of these factual differences the opt-ins are not similarly situated and the action cannot be tried as an FLSA collective action.

The plaintiffs contend that the opt-ins are similarly situated and that the court should allow the case to go forward as an FLSA collective action. The plaintiffs argue that the Opt-Ins in this case are indistinguishable from the store managers in *Morgan*, 551 F.3d at 1233. This court agrees that the GMs in this case are akin to the store managers in *Morgan*: all GMs had the same job description; they were subject to corporative directives and the detailed "Pathway Manual;" they underwent the same on-line and in-store training; they attended the same regional meetings and occasional nationwide meetings; and they were paid under the same compensation scheme without any individualized evaluation of their specific job duties. These overarching similarities in fundamental aspects of the managers' jobs and responsibilities led the court in *Morgan* to uphold the denial of the decertification of the class, and the court will follow its reasoning.

In *Morgan,* the Eleventh Circuit determined that the district court did not abuse its discretion in denying the defendant's motion for decertification because the district court found the opt-in plaintiffs were similarly situated. In that case, the plaintiffs offered evidence that the defendant "uniformly exempted all store managers from overtime pay requirements" and that "its exemption decision did not turn on any individualized factors." *Morgan*, 551 F.3d at 1264. The Eleventh Circuit stated that, "There is nothing unfair about litigating a *single corporate decision* in a single collective action, especially where there is robust evidence that store managers perform uniform, cookie-cutter tasks mandated by a one-size-fits-all corporate manual." *Id.*

(emphasis added). Aaron's "single corporate decision" to uniformly treat its GMs as exempt employees supports this court's decision to try this case as a single collective action under *Morgan*. *See id.*

Having fully considered the three *Anderson* factors as discussed on the record, the court determines that the opt-in plaintiffs are similarly situated and that fairness and procedural concerns weigh in favor of the case proceeding to trial as a collective action. For these reasons as more fully stated on the record, the court DENIES Aaron's motion for decertification.

DONE and ORDERED this 23rd day of January, 2013.

Karon O. Bowdre

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE