FILED
2013 Aug-01  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TOM KUNSTMANN, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. CV-08-1969-KOB JURY DEMAND |
| AARON RENTS, INC.  d/b/a AARON'S SALES AND LEASE OWNERSHIP, | ) ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' REQUEST FOR ADDITIONAL DISCOVERY

The defendant has filed a response opposing Plaintiffs' request for additional discovery. In its response, the defendant refers to the plaintiffs' request as being "hypocritical," "untenable," "inexplicable," "inexcusable," "irrelevant," "unreasonable" and a complete waste of time.  However, as the Court will clearly be able to determine by the following facts, not hyperbole, Plaintiffs' request is not only tenable but it is critical to ensure that the gamesmanship the defendant has attempted to execute on the plaintiffs and this Court is prevented.

## A.   <u>Plaintiffs' Request Is Necessitated By Defendant's Own Conduct</u>

But for the defendant's own conduct of "hiding the ball," Plaintiffs would have not been forced to file its pending motion. As the Court is aware, Plaintiffs have sought to move this case toward trial.  It is the defendant who has sought additional discovery and for the defendant to now accuse the plaintiffs of wasting time[1] and attempting to obtain a "second bite of the apple" is simply put, disingenuous at best.

The defendant intentionally only gives the court half-truths to support its motion and, when one examines the following time-line, one can clearly determine that, but for the defendant's own conduct, additional discovery would not be needed.

### <u>TIME LINE OF EVENTS</u>

- October 22, 2008 - Plaintiff Kuntsmann files complaint against defendant.

- December 22, 2008 - Defendant files answer to complaint (attached hereto as Exhibit "A").  Defendant's Answer contains **12** Affirmative

---

[1]Defendant's proposed trial plan proposed to send written requests for admission, interrogatories and requests for production to the 247 remaining opt-in plaintiffs concerning a variety of subjects. The defendant wanted 45 days to conduct this discovery and then wanted to extend the dispositive motion deadline another 30 days after the conclusion of the pre-trial discovery. Finally, the defendant wanted the court to allow the plaintiffs an additional 45 days after the court ruled on the new dispositive deadlines to submit a trial plan and the defendant an additional 30 days thereafter to file a rebuttal to that plan. In total, the defendant's "proposed" plan, (Doc. #269), would have extended the current deadlines a <u>minimal</u> 150 days, not counting the time it took the court to rule on the pending motions. Plaintiffs simply wanted a mere 45 days to take a couple of depositions and the defendant accuses plaintiffs of  "wasting time!"  In addition, plaintiffs objected to the defendant being allowed to file the additional summary judgment motions because of the amount of time that had already passed but the court allowed the motions to be filed which resulted in more delay.

defenses. In its answer, at ¶11 of its Twelve Affirmative defense, Defendant admits to paying GMs a "specified weekly salary." Defendant's Fifth Affirmative defense claims that "Plaintiff and other similarly situate GM's as exempt based on the their duties and responsibilities." (¶5). Defendant's Seventh Affirmative defense claims "Plaintiff and other similarly situated GM's as exempt under Section 213(a) of the FLSA." In its answer to ¶17 of the complaint –"[T]he provisions set forth in §§206 and 207, respectively, of the FLSA apply to defendants and all similarly situated General Managers who are or were covered by §§206 and 207 of the FLSA during their employment by Defendants – the defendant denied the allegation. In other words, §207 does not apply to the plaintiffs.

- May 4, 2009 - Plaintiffs move for Reconsideration of the Court's denial for conditional certification.

- May 18, 2009 - Judge Acker denies Plaintiffs' request in part and orders the Plaintiffs to depose 10 opt-in plaintiffs on the issues of "desire to opt-in" and "similarly situated." The depositions are not suppose to delve into the merits of the case.

- June 17, 2009 through July 23, 2009 - Plaintiffs depose 8 GMs on the issue of pay/compensation.

- June 7, 2010 - Plaintiffs serve written requests for admissions, interrogatories and requests for production on defendant. Defendant responded to plaintiffs' written discovery on July 12, 2010. Despite being asked, the defendant never divulged that it was claiming §7(i) as a defense.

- July 13, 2010 through July 24, 2011- Defendant deposes 25 plaintiffs. The thrust of the depositions concentrated on the plaintiffs' job duties and responsibilities and dealt very little, if at all, as to how the plaintiffs were compensated.[2]

---

[2]Plaintiffs, if the court so desires, can submit the 25 depositions for court review.

- Plaintiffs' counsel sends repeated correspondence to defendant's counsel repeatedly asking the defendant to identify specifically what exemption(s) the defendant is claiming for the position of GM. (Exhibit "B" is attached hereto as an e-mail dated 7/9/10; Exhibit "C" is attached hereto as a letter of July 20, 2010).

- Defendant's counsel informs plaintiffs' counsel through e-mail that it is only claiming the executive, administrative and combination exemptions. (Exhibit "B").

- July 2, 2010 - Defendant files Amended Answer. Defendant's Amended Answer amended the Tenth Affirmative defense, i.e. jury waiver and adds a new affirmative defense of judicial or other estoppel for failure to disclose claims in bankruptcy and  to add a new affirmative defense designated as Thirteen Affirmative defense. (Exhibit "D" is attached hereto as the Amended Answer).

- July 20, 2010 - Plaintiffs' counsel writes defendant's counsel a F.R.Civ.P. 37 letter where he specifically ask the defendant to identify exactly which exemption(s) the defendant is claiming.

- August 4, 2010 - Defendant's Counsel responds to Plaintiffs' counsel's letter of July 20, 2010. (Exhibit "E" is attached hereto as the August 4, 2010 letter).  In counsel's letter, counsel states:

> "...Defendant in fact does provide the _specific_ exemption by citing to FLSA §13(a), which sets forth what is commonly referred to as the "white collar exemptions."  As you are no doubt aware, the FLSA contains a substantial number of exemptions, including the "retail exemption" at FLSA 7(i) and others including, by way of example of the potentially applicable here, FLSA §§7(f), 13(b)(1) and 13(b)(11).  **Defendant's response makes clear that none of those exemptions are**

**being invoked here**.[34] (Emphasis added)

- 2011 - Plaintiffs schedule and take depositions of various RMs as well as several 30(b)(6) deposition. The entire focus of Plaintiffs' depositions centered solely around the job duties and responsibilities of the GMs and the defendant's various policies and procedures. In fact, Plaintiffs' counsel specifically asked its 30(b)(6) designees which exemptions the defendant was claiming and both designees testified that Aarons was claiming the administrative, executive and combination exemptions.[5] (Chad Strickland Depo., pp. 52(5)-53(4)[6]; Jessica Lawrence Depo., pp. page 18(4)-19(10))[7]. Neither designees hinted in any shape or form that the defendant also maintained that the plaintiffs were not entitled to overtime compensation based on §7(i).

- **Discovery initially closes on February 28, 2011.[8]**

- August 10, 2011 - Defendant hires new counsel.

- September 23, 2011, **13 months after** the defendant had specifically disavowed claiming 207(i) as a defense and **7 months after** discovery had been closed, current counsel, **for the first time since the complaint**

---

[3]Despite repeated opportunities to explain why the August 4, 2010 letter was sent, the defendant has run and hid from these opportunities.

[4]The defendant freely, without a request from the plaintiffs to do so, volunteered the fact that it was not claiming §7(i) as a defense.

[5]Strickland was originally designated as a 30(b)(6) designee but subsequently withdrawn.

[6]Strickland's deposition excerpts are submitted as Exhibit "F".

[7]Lawrence's deposition excerpts are submitted as Exhibit "G".

[8]Due to various reasons, the parties jointly moved the Court for an Order extending the discovery deadline in regards to the plaintiffs taking an additional 30(b)(6) deposition. As a result, discovery for the limited purpose of plaintiffs taking his 30(b)(6) deposition was extended until July 29, 2011. (Doc. #205). Discovery was forced to be continued again until September 9, 2011, to allow plaintiffs' counsel to depose Chad Strickland, an original person identified by the defendant as a 30(b) corporate represented.

**had been filed some 3 years prior**, informs plaintiffs' counsel so
Plaintiffs "will not be surprised by arguments that [Defendant] will
make" including that "Plaintiff and opt-in plaintiffs ... paid in
compliance with §7(i). (Exhibit "H" is attached hereto as the September
23, 2011 letter).

As the time line clearly illustrates from the time the lawsuit was filed in 2008

until September, 2011 the defendant never once mentioned, hinted, insinuated or even

remotely suggested that it was claiming a §7(i) defense. One can call §7(i) an

exemption and/or an exception but that doesn't change the fact that the defendant

never claimed the defense until some 7 months after discovery was closed. The name

certainly does not affect the plaintiffs' ability to even discover that the provision was

in play and to conduct discovery into the applicability of the provision.  If the

defendant would have been claiming the defense throughout the litigation, plaintiffs

would have conducted extensive discovery on the issue but, because the defendant not

only did not claim the defense but hid the defense, the plaintiffs conducted little to no

discovery on the issue.

The depositions cited by the defendant to support its opposition at pages 6-8

and 17 were non-merit depositions taken by Order of the court and were taken in order

to satisfy the court's inquiry into how the plaintiffs were paid. They were not merit

depositions.  Once the defendant made it clear through its August, 2010 letter as well

as its e-mail of July 9, 2010 that it was not claiming the defense there was no need to

conduct any discovery on the issue in the merits depositions.[9]

The defendant's argument that it had no obligation to notify plaintiffs of its §7(i) defense is very telling.  First, it establishes that the defendant did not notify the plaintiffs of its §7(i) defense until after discovery was closed because it believed it did not have any obligation to do so because "as the Court has already found ... §7(i) is not an affirmative defense." The Court did not find that §7(i) was an affirmative defense until October on 14, 2012. (Doc. 253 at 15).[1011]  The defendant cannot rely on a ruling by the court that was made some 23 months after discovery was closed to

_____

[9]The defendant cites the court to the deposition of Regional Manager, Paula Hooks, to support its argument that plaintiffs' discovery focused heavily upon compensation. First, Hooks' deposition was taken on May10, 2011, some 9 months after defendant has disavowed a §7(i) defense, so there was no reason to question Hooks on the GM compensation plan. Second, Hooks testified that she had received training on the FLSA and when asked to tell what she knew about the FLSA she testified "I know you have exempt verses nonexempt employees .. I know that exempt employees need to direct or supervise two or more employees." Exhibit "I" attached hereto as Paula Hooks Depo., p. 27(2-15).  Third, Hooks' deposition was 137 pages and the defendant is only able to direct the court to 2 lines of her entire deposition. This hardly supports the defendant's argument that plaintiffs' discovery focused heavily on the GM compensation plan.

[10]Although the Court has initially ruled that §7(i) is not an affirmative defense plaintiffs respectfully disagree with the court's ruling. Any matter raised by a defendant that precludes liability is nothing more than an affirmative defense.  *See Black's Law Dictionary* (defining an affirmative defense as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or presecution's claim, even if all of the facts in the complaint are true."). That is exactly what the defendant is claiming by now pleading the defense. Regardless if §7(i) is an exemption or an exception the defendant's entire argument is that because it allegedly complied with §7(i) it cannot be held liable for plaintiffs' damages. By definition alone, §7(i) can be nothing more than an affirmative defense.

[11]The *Walton v. United Consumers Club* case cited by Aaron's and the Court to hold that 7(i) was not an affirmative defense and was not waived based on the circumstances presented in that case is distinguishable from this case since the *Walton* defendant did not affirmatively inform its opponent that 7(i) was not an issue in the case.  786 F.2d 303 (7th Cir. 1986).

7

support its argument that it had no obligation to inform the plaintiffs during the discovery period of this defense.[12]  Second, failing to plead a defense or failing to notify a party of a defense until after discovery is closed is a clear violation of the letter and spirit of the Federal Rules of Civil Procedure.  *See Diaz v. Jaguar Restaurant Group., LLC.* 627 F.3d 1212 (11th Cir. 2010)(waiver for failure to plead an affirmative defense); *Zimmer v. United Dominion Industries, Inc.,* 193 F.R.D. 616, 619 (W.D. Ark. 2000)(denying defendant's motion for summary judgment using a fairness analysis where defendant raised a defense at summary judgment for the first time because the "defendant should bear the burden of raising the matter if 'all or most of the relevant information on a particular element of a claim is within the control of one party," and "Plaintiff made a good faith effort to discern" information about the issue.).  Third, and probably most important, Aaron's did more than fail to notify Plaintiffs that 7(i) was in play, they affirmatively told Plaintiffs that 7(i) was not at issue in this case, no matter that they had made a general denial of liability in the answer.  By making this affirmative representation, Aaron's change the playing field and substantially narrowed the scope of discovery in this case.  While Plaintiffs believe that Aaron's should be barred from raising 7(i) to avoid liability, in the

---

[12]In any event, whether or not the retail sales provision should have been pled or otherwise disclosed during discovery, it does not make sense that Aaron's should escape from consequences of its intentional misleading actions in affirmatively telling Plaintiffs that the retail sales provision was not in play in this case.

alternative, at the very least they should be allowed an opportunity to conduct some discovery on this issue.

### B.   The Pre-Notice Discovery Did Not Relate To The Merits of The Case and Did Not Offer Plaintiffs A Full Opportunity To Conduct Discovery on this Issue.

Aaron's claims that Plaintiffs have already conducted discovery on the retail sales commission plan during the **pre**-notice discovery period allowed by Judge Acker. That claim is not true. Judge Acker was clear that this pre-notice discovery went only to the issue of whether the General Managers were similarly situated, not to the merits of the case. *See* Doc. 37 p.12. In other words, Judge Acker allowed pre-notice discovery to determine if the General Managers were paid under the same pay policy, but did not allow Plaintiffs the opportunity to conduct discovery as to how that policy worked. *See* Doc. 73 (striking pre-notice deposition questions that went to the merits of the case.). Therefore, Plaintiffs did not have the ability during this pre-notice discovery period to conduct full-blown merits discovery as to how the General Manager compensation plan worked.

Judge Acker only allowed Plaintiffs to depose 10 randomly selected General Managers for this pre-notice discovery. Plaintiffs were not allowed to question higher ranking company officials or even take a 30(b)(6) deposition on company-wide policies during this pre-notice period. Thus, to the extent discovery was even

arguably allowed on this issue Plaintiffs were not given access to high ranking officials who could sufficiently bind the company on this issue.

Furthermore, the answers to the pre-notice deposition questions cited by the defendant did not provide any indication that Aaron's was claiming the retail sales "exemption/exception."  For example, Aaron's cites the questions asked of General Manager Lester Gonzalez by Plaintiffs' counsel, but fails to provide the deponent's answers. *See e.g.,* Doc. 300 p.7.  Mr. Gonzalez testified that

> Q.   Did he call your compensation a salary?
> A.   My pay a salary, how I get paid monthly in the company?
> Q.   Yes, did he call it a salary?
> A.   It is a salary.
> Q.   Okay.  Well, if you look at page two, General Manager's Compensation, that you said you've seen before, it says this form of compensation is called a draw.  Do you see that?
> A.   Yes.
> Q.   Did he ever call it a draw?
> A.   I don't remember that at the time.

Doc. 77-2 p. 62:5-17.  Furthermore, Mr. Gonzalez never discussed commissions during his deposition.

Likewise, General Manager Jason Utley testified

> Q.   Okay.   All right.  So explain to me how you are compensated.
> A.   Salary based off of revenue of the store, which I believe they update twice a year.

Doc. 77-1 p. 20:7-10.  Utley's testimony regarding commissions revealed very little

insight to Plaintiffs:

> Q.    Okay.  So you would qualify for a commission adjustment?
> A.    Yes.
> Q.    Now what's the commission?  Do you know what the commission is?
> A.    No.
>
>                 ******
>
> Q.    But you don't know anything about any commissions as a GM?
> A.    No.

Doc. 77-1 p. 75:4-9, 15-17.

Finally, General Manager Elijah Dixon stated that he was only paid a salary and was not paid a draw according to the compensation plan:

> Q:    Do you remember if Mr. Brenson called your compensation a draw, or did he call it a salary?
> THE WITNESS:   I don't recall
> Q:    So looking at this first page, is this, in fact, an explanation of how you were compensated as a general manager?
> THE WITNESS:   Can you rephrase?
> Q:    If you look at the first page, is this an explanation of how you are compensated as a general manager?
> THE WITNESS:   No.
> Q:    Can you tell me why this does not explain how you're compensated?
> THE WITNESS:   Because I receive - - I receive a salary.
> Q:    Well, if you look at this page, is there anything on this page that describes your compensation as a salary?
> A:    No.
> Q:    Now, in the second sentence, do you see that it's in bold?
> A:    Um-hum.
> Q:    It says, "A GM will receive a monthly level of income that approximates the anticipated financial performance of their

store."  Do you see that?

A:    Yes.

Q:    Does that conform to your understanding of how you are compensated?

A:    No.

Q:    Why not?

A:    Because I - - you know, I haven't - - the way I receive - - I receive a salary.  It's not broken down on a draw from my understanding.

(Doc. 77-6 pp. 38(1)-39(20)(objections omitted)).

The questions asked by defense counsel during these depositions also did nothing to clear up this issue.  For example, General Manager Charles Everette was asked:

Q.    What was your salary when you were the manager of the — the general manager of the Huntsville store?

A.    It was originally 62,000, and then it was bumped to 70,000.

Q.    What was your salary as a general manager of the Winston-Salem store?

A.    Seventy thousand.  And then that was decreased to 63,000.

Doc. 77-2 p. 100:10-18.

Defendant cannot be allowed to claim that Plaintiffs were afforded an opportunity to conduct merits discovery on the §7(i) issue during the limited pre-notice discovery period.  First, the court was clear that the discovery during that period was for notice purposes only and that the parties were not to go into the merits of the case.  The focus of that inquiry was "similarly situated."  The court went as far as to strike provisions of the depositions that went beyond the similarly situated

12

inquiry and delved into the merits.

Second, Plaintiffs were only allowed to depose 10 randomly selected General Managers during the pre-notice period, not a 30(b)(6) representative and not a higher ranking company official who could testify about the compensation scheme. Third, as the above deposition excerpts show, the pre-notice discovery only served to confirm what Plaintiffs learned from the defendant's Answer and August 4th letter - namely that the General Managers were paid a salary and that the FLSA's §7(i) provision was not in play. It would be highly unfair and prejudicial to Plaintiffs if they were forced to rely on these 10 pre-notice, class certification depositions of General Managers as their only meaningful opportunity to discovery evidence concerning the application of §7(i) in this case. Thus, the Court should now allow discovery on this issue in order for Plaintiffs to be able to respond to the issues addressed in the pending summary judgment motion.

### C.     Response To Defendant's Argument That Plaintiffs Do Not Satisfy The Requirements Of Rule 56(d)

The defendant makes the preposterous arguments that plaintiffs "fail to even cite or mention the rule" and "it is unclear whether Plaintiffs read the decision (*Virgilio v. Ryland Group, Inc.*). Making such foolish and unsupported arguments is nothing more than a sign of desperateness. Plaintiffs not only mention the rule, they filed an affidavit with their motion as required by the rule.  In addition, plaintiffs correctly relied on *Ryland* and complied with the standard required to justify discovery being reopened.

The defendant takes great issue with the topics identified in plaintiffs' motion. However, despite defendant's erroneous arguments to the contrary, the topics identified by the plaintiffs are not irrelevant or immaterial.  They are clearly relevant to the defendant's pending motions. As set out in plaintiffs' motion for additional discovery, the defendant has 4 summary judgment motions currently pending: (1) §7(i); (2) willfulness; (3) calculation of damages; and (4) failure to disclose lawsuit in plaintiffs' bankruptcy proceedings.  The topics identified by the plaintiffs wherein discovery is needed deal directly with 3 of the 4 pending summary judgment motions. The defendant's §7(i) motion is tied directly to the defendant's pending willfulness motion.

The defendant argues, at pages 15-16, that "nine of the questions are completely

14

irrelevant to the elements of §7(i).  Plaintiffs strongly disagree. In its pending motion

for summary judgment on the issue of "willfulness," the defendant argues, "[E]ven

assuming, *arguendo*, that there is a triable issue on Defendant's exemption defenses

and §7(i), Plaintiffs cannot establish that Aaron's willfully violated the FLSA.[13]

Seven of the nine questions, questions 1, 2, 5, 8, 9, 10 and 11, identified by the

defendant as being irrelevant are clearly relevant to both the §7(i) defense as well as

the defendant "willfulness" argument.[14]

1.     Why did the defendant admit in its August 4, 2010 letter that it was not
       claiming the Retail Sales Exemption?

2.     Why did the defendant changes its mind on claiming the Retail Sales
       Exemption ...?

5.     Why did the defendant when it gathered 1000+ declarations from its then
       current GMs, only inquire about the requirements of the "executive
       exemption?

8.     Who wrote the letter of August 4, 2010 ....?

9.     Why did the defendant admit in its answer that all GMs were paid a
       guaranteed salary?

---

[13]The defendant has not moved for summary judgment on it so called "exemption defenses."
This is simply more evidence that §7(i) is an affirmative defense. The defendant has placed all of
its eggs in one basket, i.e the §7(i) basket, in order to avoid liability.

[14]The defendant makes the argument that "courts in this circuit have been hesitant to find
willful behavior by an employer, even amid "strong evidence" of its FLSA violation."  The
defendant cites the court to 1 District Court case to support its argument. There are numerous
decision in the 11th Circuit, including, but not limited to *Morgan v. Family Dollar Stores* 551 F.3d
1233(11th Cir. 2008) wherein the 11th Circuit upheld a finding of willfulness.

10.     Who approved the letter of August 4, 2010?

11.     When and why did the defendant decide to claim the Retail Sales exemption?

Each of these topics "**specifically**" identify topics that go directly to the defendant's state of mind and whether the defendant "knew or showed reckless disregard" in classifying its GMs as exempt employees. The fact that the defendant has been all over the board throughout this litigation in explaining, or at least attempting to explain, why its GMs are exempt and not entitled to overtime compensation speaks volumes in regards to the question of whether the defendant, at the time it made the decision to classify its GMs as exempt employees, truly believed it GMs were exempt employees or whether at the time they made the decision did they simply classify the position as exempt in order to avoid paying GMs overtime compensation. An employer who cannot explain or who consistently changes it position on this critical issue will have a difficult time explaining to a jury such inconsistencies.[15]  These type of inconsistencies go directly to the issue of willfulness.

---

[15]The defendant makes the erroneous argument that "[V]arious witnesses testified about the good faith measures Aaron's takes to ensure FLSA compliance. The fact of the matter is Aaron's witnesses testified that it had never conducted any studies to determine whether the GM position was properly classified.  In fact, one witness testified that the reason they solicited the 1000+ declarations from its current GMs, after this lawsuit was filed, was because it was unsure whether the position was properly classified. (Exhibit "F" - Deposition of Chad Strickland, pp. 27(15)-29(4); 33(1-16); 72(19)-75(12); 87(10-23); Exhibit "J" is attached as the Deposition Tristan Montanero, pp. 13(7-16).

The remaining questions are also relevant in regards to responding to the defendant's pending motions. There is no justifiable reason to allow this defendant to continue to play "hide-in-seek" with the facts.

### D.   Defendant's "Good Cause" Argument Is, At Best, Absurd

At pages 19-20, the defendant has the audacity to argue that plaintiffs "fail to show good cause for *their* delay in seeking additional discovery... the evidence upon which Defendant's motion is based derive from a discovery period that closed two years ago. While it may be reasonable for this Court to forgive Plaintiffs some delay, it would not be reasonable to forgive 22 months of delay ... Any claim by plaintiffs that they have now been surprised by Defendant's motion does not pass the *straight face* test. Plaintiffs should stop wasting time. They should not be afforded a second bite of the apple." While it is hard to imagine how the defendant could, as they argue, makes these arguments with a "*straight face*" is mystifying at best.

The defendant did not even file their current motions until July 12, 2013. The plaintiffs filed their motion for additional time 4 days later. There was no reason to file plaintiffs' motion until the defendant filed its motions. Where the defendant comes up with the argument that plaintiffs waited 22 months is again mystifying.

In making the argument that the plaintiffs were dilatory in filing their motion the defendant, as it has done throughout this litigation, ignores the facts. It is

undisputed, and the defendant has certainly not presented the court with one piece of evidence to refute it, that not once during the time period from October 24, 2008 until February 28, 2011, some 28 months, did the defendant ever inform the plaintiffs that it was even claiming a §7(i) defense. But yet the defendant wants to gloss over this undisputed fact and attempt to blame the plaintiffs for allegedly waiting 22 months to file its motion for additional discovery. Plaintiffs feel quite confident, based on the history of this litigation, that even if plaintiffs would have requested additional discovery back in September, 2011 when the defendant first notified the plaintiffs that they were claiming such a defense, the defendant would have opposed that motion as well.[16]

Plaintiffs are not now claiming surprise that defendant is now pursuing this defense. Plaintiffs informed this court on multiple occasions that it was surprised the defendant would even attempt to claim this defense considering its August 24, 2010 letter. The defendant even admits that the reason they sent their letter of September 23, 2011 was –"*[W]e write at this time to ensure that you will not be surprised by the arguments that Aarons will make* in support of its decertification and summary

---

[16]The defendant attempts to make much ado about the fact that plaintiffs fails to explain to the court why they never responded to the defendant's September 23, 2011 letter. The reason is simple, there was nothing to respond to. The defendant letter was sent after discovery had closed and totally contradicted a letter sent during discovery which plaintiffs relied upon to conduct is discovery. There was nothing to respond to.

18

judgment motions." The September letter confirms the fact that Aaron's has known all along that it had not pursued a §7(i) defense and any argument to the contrary is totally without merit.

The argument that plaintiffs are seeking a "second bite of the apple" is also without merit considering all of the above facts and considering the fact that the defendant has now been allowed file two separate decertification motions on the same issue. If anyone has been afforded a second bite of the apple it is the defendant. Plaintiffs have not even had a first bite of the apple due to defendant's deliberate tactics not to reveal a §7(i) defense until after discovery had been closed. All plaintiffs are seeking is fair and balanced playing field nothing more and nothing less. Denying the plaintiffs' motion would ensure that the defendant's manipulative gamesmanship has been successful.

## CONCLUSION

Plaintiffs believe that Aaron's should be prohibited from using 7(i) to avoid liability in this case and once again ask the Court to bar the defendant from pursuing that provision.  In the alternative, should the Court still allow Defendant to pursue 7(i), Plaintiffs should be allowed to conduct discovery on that issue in order to respond to the defendant's Motion for Summary Judgment.  The defendant does not present one valid reason why the plaintiffs should not be allowed to conduct the

limited discovery it has proposed. The alleged reasons presented by the defendant are nothing more than a smoke screen to cover up its own misbehavior. Plaintiffs are certainly not asking for this discovery to delay this litigation or waste time for as the defendant points out at page 3 "Plaintiffs have been attempting to fast-track this case to trial for a merits decision" from the outset. For the reasons stated in plaintiffs' initial motion for additional discovery as well as the reason set out in this response, this Court should grant the plaintiffs' motion.

Respectfully submitted,


/s/Gregory O. Wiggins
Gregory O. Wiggins
Kevin W. Jent
*Counsel for the Plaintiffs*

OF COUNSEL:

WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have filed today, August 1, 2013, by CM/ECF, the Court's e-filing system, which will serve a copy of the foregoing to the following:

Brett C. Bartlett
Robert C. Stevens
Camille Olsen
SEYFARTH SHAW LLP
1075 Peachtree Street NE
Suite 2500
Atlanta, GA 30309-3962

Arnold W. Umbach
STARNES, DAVIS, FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209

<u>/s/Gregory O. Wiggins</u>
OF COUNSEL