IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TOM KUNSTMANN, on behalf of himself and all others similarly situated**, | ]<br>]<br>] |
| **Plaintiff,** | ]<br>] |
| | ]   **2:08-cv-01969-KOB** |
| v. | ]<br>] |
| **AARON RENTS, INC., d/b/a Aaron's Sales and Lease Ownership,** | ]<br>]<br>] |
| **Defendants.** | |

**MEMORANDUM OPINION**

This matter is before the court on "Defendant's Motion for Summary Judgment Regarding Opt-In Plaintiffs Who Failed to Disclose Their Claims Against Defendant In Prior Court Proceedings." (Doc. 283). Plaintiff Tom Kunstmann brings this Fair Labor Standards Act ("FLSA") opt-in class action suit on behalf of himself and all others similarly situated, seeking equitable and injunctive relief to remedy alleged violations of the wage provisions of the FLSA. In this motion for partial summary judgment, Defendants argue that ten of the opt-in Plaintiffs to the class action are judicially estopped from pursuing their claims because each of the ten failed to disclose their claims in a prior court proceeding. For the following reasons, the court will GRANT IN PART and DENY IN PART Defendant's motion for summary judgment.

**I.      FACTS**

According to Appendix II, "*[a]ll additional material facts set forth in the statement required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted by the statement of the movant*." (Appendix II, at 6). Because Defendant did

1

not comply with the requirement to specifically address Plaintiff's statement of additional facts in separately numbered paragraphs, the court will consider those four facts admitted.

The facts relevant to this motion center around ten individual opt-in Plaintiffs: Alex W. Hunter, Cornelius S. Miner, Betty A. Pell, John Tiernan, Carlos Zamarripa, Daniel J. Pike, Latanya E. Stafford, Larry Roberson, Larry Shuler, and Muhammad Basharat.

Alex W. Hunter worked for Aaron Rents, Inc. ("Aaron's") from May 16, 1999 to May 15, 2008 and worked as a General Manager for part of that period. (Doc. 303, ¶ 1). On December 27, 2007, Mr. Hunter filed a Chapter 13 Bankruptcy Petition in the District Court for South Carolina. (Doc. 303, ¶ 2). On March 15, 2010, he opted in to this collective action. (Doc. 303, ¶ 1). The bankruptcy court discharged Mr. Hunter and closed his bankruptcy case on or about February 4, 2013. (Doc. 303, ¶ 2). Mr. Hunter did not disclose his overtime claim against Aaron's to the bankruptcy court at any point prior to the discharge of his bankruptcy. (Doc. 303 ¶ 3).

Cornelius S. Miner worked for Aaron's from June 15, 2009 to November 20, 2009. (Doc. 303, ¶ 4). On April 9, 2009, he filed a Chapter 13 Bankruptcy Petition in the Bankruptcy Court for the Northern District of Georgia. (Doc. 303, ¶ 5). On April 8, 2010, Mr. Miner opted in to this collective action. (Doc. 303, ¶ 4). As of the date of Defendant's motion, Mr. Miner's bankruptcy case remained open and he had not disclosed his overtime claim against Aaron's to the bankruptcy court. (Doc. 303, ¶¶ 5-6).  Mr. Miner previously filed for bankruptcy in July 1998 in the Bankruptcy Court for the Eastern District of Missouri. (Doc. 303, ¶ 7).

Betty A. Pell worked for Aaron's from October 22, 2007 to December 12, 2007. (Doc. 303, ¶ 8). On December 15, 2009, she filed a Chapter 13 Bankruptcy Petition in the Bankruptcy Court for the Southern District of Texas. (Doc. 303, ¶ 9). On March 4, 2010, Ms. Pell opted in to

2

this collective action. (Doc. 303, ¶ 8). As of the date of Defendant's motion, Ms. Pell's bankruptcy case remained open and she had not disclosed her overtime claim against Aaron's to the bankruptcy court. (Doc. 303, ¶¶ 9-10).

John Tiernan worked for Aaron's from April 2, 2007 to July 31, 2008, and worked as a General Manager for part of that period. (Doc. 303, ¶ 11). On May 22, 2009, he filed a Chapter 13 Bankruptcy Petition in the Bankruptcy Court for the Southern District of Illinois. (Doc. 303, ¶ 12). On February 25, 2010, Mr. Tiernan opted in to this collective action. (Doc. 303, ¶ 11). On May 28, 2013, Mr. Tiernan disclosed his overtime claim against Aaron's to the bankruptcy court. (Doc. 303, pg. 4, ¶ 2). As of the date of Defendant's motion, Mr. Tiernan's bankruptcy case remained open. (Doc. 303, ¶ 12). Mr. Tiernan previously filed for bankruptcy in 1997 and in 1998, both times in the Bankruptcy Court for the Northern District of Georgia. (Doc. 303, ¶ 14).

Carlos Zamarripa worked for Aaron's from May 24, 2004 to January 20, 2009, and worked as a General Manager for part of that period. (Doc. 303, ¶ 15). In October 2006, he filed a Chapter 13 Bankruptcy Petition in the Bankruptcy Court for the Southern District of Texas. (Doc. 303, ¶ 16). On March 3, 2010, he opted in to this collective action. (Doc. 303, ¶ 15). Mr. Zamarripa failed to disclose his overtime claim against Aaron's to the bankruptcy court. (Doc. 303, ¶ 17). On June 12, 2012, the bankruptcy court closed Mr. Zamarripa's case without discharge. (Doc. 303, ¶ 16). Mr. Zamarripa had previously filed for bankruptcy in 2004 in the Bankrupcy Court for the Southern District of Texas. (Doc. 303, ¶ 18).

Daniel J. Pike worked for Aaron's from August 12, 2008 to June 25, 2010, and worked as a General Manager for part of that period. (Doc. 303, ¶ 19). On May 22, 2008, he filed a Chapter 13 Bankruptcy Petition in the Bankruptcy Court for the Southern District of Indiana. (Doc. 303,

3

¶ 20). On April 26, 2010, he opted in to this collective action. (Doc. 303, ¶ 19). On September 13, 2011, the bankruptcy court closed Mr. Pike's case. (Doc. 303, ¶ 20). On March 20, 2013, Mr. Pike disclosed his overtime claim to the bankruptcy court. (Doc. 303, pg. 4, ¶ 1).

Latanya E. Safford worked for Aaron's from April 5, 2004 to December 15, 2007, and worked as a General Manager for part of that period. (Doc. 303, ¶ 22). On May 22, 2009, Ms. Safford, whose last name was "Mounticure" at the time, filed a Chapter 13 Bankruptcy Petition in the Bankruptcy Court for the Northern District of Alabama. (Doc. 303, ¶ 23). On April 3, 2010, she opted in to this collective action. (Doc. 303, ¶ 22). As of the date of Defendant's motion, Ms. Safford's bankruptcy case remained open and she had not disclosed her overtime claim to the bankruptcy court. (Doc. 303, ¶ 23-24).

Larry Roberson worked for Aaron's from January 11, 2005 to June 27, 2008, and worked as a General Manager for part of that period. (Doc. 303, ¶ 25). On May 22, 2009, he filed a Chapter 13 Bankruptcy Petition in the Bankruptcy Court for the Middle District of Alabama. (Doc. 303, ¶ 26). On December 23, 2009, he opted in to this collective action. (Doc. 303, ¶ 25). On January 6, 2011, Mr. Roberson disclosed his overtime claim to the bankruptcy court. (Doc. 303, ¶ 27). Mr. Roberson had previously filed bankruptcy in August 2007 in the Bankruptcy Court for the Northern District of Alabama. (Doc. 303, ¶ 28).

Larry Shuler worked for Aaron's from April 5, 2004 to December 15, 2007, and worked as a General Manager for part of that period. (Doc. 303, ¶ 29). On September 29, 2009, he filed a Chapter 13 Bankruptcy Petition in the Bankruptcy Court for the Southern District of Georgia. (Doc. 303, ¶ 30). On March 4, 2010, Mr. Shuler opted in to this collective action. (Doc. 303, ¶ 29). On March 28, 2011, Mr. Shuler informed the bankruptcy court of his overtime claim

against Aaron's. (Doc. 303, ¶ 31).

Muhammad Basharat worked for Aaron's from September 15, 2003 to February 21, 2008, and worked as a General Manager during part of that period. (Doc. 303, ¶ 32). On January 25, 2010, Mr. Basharat's ex-wife initiated a child support custody case against him in the Superior Court of Douglas County for the State of Georgia. (Doc. 303, ¶ 33). On April 8, 2010, Mr. Basharat opted in to this collective action. (Doc. 303, ¶ 32). He did not disclose his overtime claim against Aaron's to the superior court. (Doc. 303, ¶ 34). The Georgia Domestic Relations pleadings require litigants to list judgments they have already attained and assets used to support the family. They do not require litigants to list contingent lawsuits. (Doc. 303, pg. 4, ¶¶ 3-4).

On March 11, 2013, Defense counsel sent a letter to Plaintiffs' counsel identifying thirty-four opt-in plaintiffs that Defendant believed should be dismissed pursuant to the judicial estoppel doctrine. All ten of the Plaintiffs at issue in this motion were included in that letter. (Doc. 283-3, Exhibit 1).

## II.  STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)

All evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282.  The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

6

### III.    DISCUSSION

#### A.    Judicial Estoppel

This case centers around the court's interpretation and application of the doctrine of judicial estoppel. Under the doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). The doctrine's purpose is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (internal citations omitted).

In applying the doctrine, the Eleventh Circuit has set out two factors that courts must consider. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)).

In addition to these two factors, courts also consider "(1) whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party." *Id*. at 1285 (citing *New Hampshire*, 532 U.S. at 750-51). These factors are not exhaustive, as the

decision to apply the doctrine of judicial estoppel is discretionary, flexible, and may be informed by the specific factual context of a case. *Id*.

In applying this law to the facts of this case, the court will divide the ten Plaintiffs at issue into four separate groups for analysis.

### B. The Bankruptcy Plaintiffs Who Never Disclosed

The first group of Plaintiffs includes the individuals who filed for bankruptcy before opting in to this case, whose bankruptcies were still open at the time they opted in, and who have not amended their bankruptcy complaints to disclose their participation in this litigation. These Plaintiffs are Alex W. Hunter, Cornelius S. Miner, Betty A. Pell, Carlos Zamarripa, and Latanya E. Safford.

Applying the first factor of the two-factor test, these five plaintiffs have taken a position under oath in a previous proceeding that is inconsistent with the position they take in this case. In each of their bankruptcy proceedings, they swore under oath that they had accurately reported their assets, including any contingent assets such as pending lawsuits. The Eleventh Circuit has found that "[t]he duty to disclose is a *continuing* one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." *Burnes*, 291 F.3d at 1286 (emphasis added). The five plaintiffs at issue here did not disclose their participation in this collective action at any time to the bankruptcy court; therefore, they have each taken inconsistent positions under oath and meet the first of the two factors.

The second factor requires that the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id*. at 1285. The Eleventh Circuit has

8

determined that in making this inquiry into intent, "deliberate or intentional manipulation can be inferred from the record." *Burnes*, 291 F.3d at 1287. The Court has further explained that "[i]n considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010) (quoting *Barger v. City of Cartersville*, 348 F.3d 1289, 1295-96 (11th Cir. 2003).

In this case, the Plaintiffs must have had knowledge of their FLSA claims because they signed the opt-in forms to become Plaintiffs in this case. (Doc. 283, Exhibits 6, 7, 8, 10, 12). Furthermore, the Plaintiffs did have motive to conceal their participation in this lawsuit; an asset—even a contingent asset—could be used to satisfy the debtor's obligations to creditors under the bankruptcy discharge. By failing to report their participation in the lawsuit, Plaintiffs had the opportunity to keep any funds they received as part of the lawsuit for themselves. Intent can also be inferred by the facts that two of the five had filed for bankruptcy before and all five were represented by lawyers in their bankruptcy cases, indicating that the failure to disclose was not a simple oversight by an inexperienced, *pro se* plaintiff.

Plaintiffs argue that their claims should not be dismissed because they each filed for bankruptcy prior to opting in to this case. Citing *Muse v. Accord Human Resources, Inc.*, they argue that they had no knowledge of their claims before opting in to this lawsuit and that opting in to a class action does not actually count as taking a position in a case. 129 Fed. Appx. 487 (11th Cir. 2005). In *Muse*, an unpublished Eleventh Circuit decision, the Court found that the plaintiff was not judicially estopped from asserting his claim because "Muse's unpaid wage

9

claim arose after confirmation of the bankruptcy plan, was not part of the bankruptcy estate, and thus, Muse did not have a duty to disclose it." 129 Fed. Appx. at 488. This decision is not binding for several reasons.

First, *Muse* is not binding precedent under the Eleventh Circuit rules because it is an unpublished opinion. *See* Eleventh Circuit Rule 36-2. Second, a more recent, published opinion on judicial estoppel contradicts *Muse* and sets out the Eleventh Circuit's current view on the matter. *See Robinson*, 595 F.3d 1269. In *Robinson*, the Court cited *Burnes* as the "seminal case in the Eleventh Circuit on the theory of judicial estoppel," and reiterated that "under the established law of this circuit, a Chapter 13 debtor has a statutory duty to disclose changes in assets." *Id*. at 1273-74. Based on this precedent, the court finds that Plaintiffs' argument that they filed for bankruptcy before opting in to this case does not protect them from the application of judicial estoppel.

This court also finds that opting in to a class qualifies as taking a position in a case. Although Plaintiffs are quick to point out the lack of any binding Eleventh Circuit precedent applying judicial estoppel to an opt-in plaintiff, the only case law they use to support their assertion to the contrary is from the Court of Federal Claims, whose precedents are not binding on this court. Given the lack of binding precedent on this issue, the court will follow the example of at least one other court in this district and find that by opting in to a class action case, a plaintiff is taking a sworn position that potentially subjects him or her to the doctrine of judicial estoppel. *See Burroughs v. Honda Mfg. of Ala., LLC*, No.: 1:08-CV-1239-VEH, 2011 U.S. Dist. LEXIS 155628 (N.D. Ala. Nov. 1, 2011); *see also Briggins v. Elwood TRI, Inc.*, No.: 1:08-cv-1861-KOB, slip op. (N.D. Ala. Jan. 24, 2012). Indeed, to find otherwise would allow the

Plaintiffs to circumvent the doctrine of judicial estoppel without any sound policy rationale for doing so. By specifically and deliberately signing a form that clearly made them party plaintiffs to this lawsuit, Plaintiffs knowingly joined this case which obligated them to disclose their participation to the bankruptcy court. The five Plaintiffs who failed to do so must be dismissed from this case under the doctrine of judicial estoppel.

### C. The Bankruptcy Plaintiffs Who Disclosed After March 11, 2013

Two of the Plaintiffs in this case—John Tiernan and Daniel J. Pike—amended their bankruptcy claims after Defendant's March 11, 2013 letter to Plaintiffs' counsel, which identified the Plaintiffs whose conduct the Defendant's believed caused them to be judicially estopped. Mr. Tiernan and Mr. Pike are like the five Plaintiffs already dismissed in every way except for their late amendments to their bankruptcy claims; therefore, the court must simply determine whether their last minute amendments are sufficient to prevent the application of judicial estoppel to their claims.

Plaintiffs argue that Mr. Tiernan and Mr. Pike's amendments show that they did not have an intent to deceive and that their failure to disclose was "probably" caused by inadvertent mistake. (Doc. 303, at 16). They argue that Mr. Tiernan and Mr. Pike are due the same treatment as Mr. Roberson and Mr. Shuler, who amended before the March 11, 2013 letter. The court finds that the timing of an amendment is important, and that the facts surrounding Mr. Tiernan and Mr. Pike are distinct from the facts surrounding Mr. Roberson and Mr. Shuler, who the court will address at a later point in this opinion.

The Eleventh Circuit has specifically addressed this type situation, holding that allowing a plaintiff to disclose "only after his omission has been challenged by an adversary, suggests that

a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets." *Burnes*, 291 F.3d at 1287. As the Court in *Burnes* indicates, the timing of an amendment is crucial; if this court allowed Plaintiffs to circumvent the application of judicial estoppel by amending their bankruptcy complaints only after being caught red-handed, the court would create an incentive for future plaintiffs to keep information about their pending lawsuits to themselves as long as possible, hoping to avoid sharing any potential payout with their creditors. As such, this court finds that Mr. Tiernan and Mr. Pike must be dismissed from this case under the doctrine of judicial estoppel.

### D. The Bankruptcy Plaintiffs Who Disclosed Before March 11, 2013

Plaintiffs Larry Roberson and Larry Shuler present another slight change of facts. In both of their cases, they amended their bankruptcy schedules well after opting in to the case, but *before* Defendant's March 11, 2013 letter. These Plaintiffs were not "caught red-handed" and made their amendments on their own initiative. Although Mr. Roberson and Mr. Shuler's delays in amending their bankruptcy schedules—both of which were about one year in length—were careless and imprudent, this court cannot impute to Mr. Roberson and Mr. Shuler the calculated intent necessary for the application of judicial estoppel given that they both corrected what could have been an inadvertent mistake on their own initiative. The court finds that Mr. Roberson and Mr. Shuler are not due to be dismissed under the doctrine of judicial estoppel.

### E. The Child Support Plaintiff

Finally, the court must determine whether Plaintiff Muhammad Basharat should be judicially estopped from pursuing this suit because he failed to disclose his participation in this

case to the court in his child custody case. Defendant argues that Mr. Basharat's situation directly parallels the situation of the five bankruptcy Plaintiffs who did not disclose and that "common sense dictates that the Superior Court of Douglas County, like the bankruptcy courts, presumably sought full and honest disclosures regarding Mr. Basharat's assets so that it could make a decision concerning the welfare of his children." (Doc. 283, at 18).

The court readily acknowledges that the doctrine of judicial estoppel is not limited to situations involving bankruptcy claims and could legitimately be invoked in many other situations—even a situation, like this one, with no direct precedent applying the doctrine to that particular set of facts. The court also agrees with Defendant that the Superior Court of Douglas County sought full and honest disclosure, at least with regard to the information it required Mr. Basharat to disclose. The key fact in this situation, however, is that nowhere in the child custody forms inquiring about Mr. Basharat's assets was he asked to list *contingent* assets or to disclose his involvement in any other lawsuits. Because Mr. Basharat was not specifically asked about this information, this court cannot find that he took a clearly inconsistent position in his child custody case and will not apply the doctrine of judicial estoppel to him. He will not be dismissed.

## IV. CONCLUSION

For the reasons discussed above, the court will GRANT IN PART and DENY IN PART Defendant's motion for summary judgment. The court will GRANT the motion as to Plaintiffs Alex W. Hunter, Cornelius S. Miner, Betty A. Pell, Carlos Zamarripa, Latanya E. Safford, John Tiernan, and Daniel J. Pike and will DISMISS them from this suit. The court will DENY the motion as to Plaintiffs Larry Roberson, Larry Shuler, and Muhammad Basharat. The court will simultaneously enter an order to that effect.

DONE and ORDERED this 9th day of April, 2014.

_/ s / Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE